Arthur L. Bell v. Commissioner.
Bell v. Commissioner
Docket No. 5275.
United States Tax Court
1947 Tax Ct. Memo LEXIS 157; 6 T.C.M. (CCH) 794; T.C.M. (RIA) 47189; June 30, 1947
*157 During the taxable year 1940 petitioner was the head of an organization or cult known as "Mankind United." In his income tax returns filed for that year he reported as his gross income the gross receipts from this organization but did not then claim any deductions for the expenses of this organization as his other claimed deductions exceeded the gross income so reported. The respondent disallowed all of the deductions claimed and determined a deficiency based upon the gross income. Among the errors assigned by petitioner was the failure to allow as business deductions the expenses of the organization. Over 73 per cent of the gross receipts of the organization were either retained by or paid back to 15 bureau managers, who used such funds for their bureau, personal and living expenses. Petitioner also paid out amounts for bookbinding, forms, literature and legal fees. Held, the amounts retained by or paid to the bureau managers were in the nature of reasonable compensation to them for personal services actually rendered and were deductible under section 23 (a) (1), I.R.C. Held, further, the amounts paid for bookbinding, forms and literature and a part of the *158 amounts paid for legal fees were also deductible under the same section of the Internal Revenue Code as ordinary and necessary business expenses. Howard B. Crittenden, Jr., Esq., for the petitioner. E. A. Tonjes, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion The respondent determined a deficiency in income tax for the taxable year ended December 31, 1940, in the amount of $14,515.64. The adjustments made by the respondent were set out and explained in a statement attached to the deficiency notice as follows: "ADJUSTMENTS TO NET INCOME
Net income (loss) as disclosed by return
($50,316.92)
Unallowable deductions and additional income: (a) Business income
$ 9,987.01
(b) Total deductions disallowed
89,230.00
99,217.01
Total
48,900.09
Nontaxable income and additional deductions: (c) Error in computation
200.00
Net income adjusted
$48,700.09
EXPLANATION OF ADJUSTMENTS
(a) Income from business is increased by $9,987.01 to agree with the
amount reported on your amended return, as shown below: Business income per amended return
$48,700.09
Amount reported on original return
38,713.08
Increase
$ 9,987.01
(b) The following deductions claimed on your return are disallowed for
lack of substantiation: Interest
$48,480.00
Taxes
250.00
Loss on foreclosure
40,500.00
Total
$89,230.00
(c) Total deductions were understated by $200.00. The correct total is
$89,230.00 as shown in item (b) above, instead of the amount of
$89,030.00 reported on your return.
(d) For lack of information relative to personal exemption credit claimed
by your wife the amount of $1,200.00 claimed on your return is dis-
allowed.
(e) Earned income credit of $300.00 is allowed, based on 10 percent of
$3,000.00 minimum earned net income."
*159 The entire deficiency is contested. By appropriate assignments of error petitioner in his second amended petition contests some of the adjustments made by the respondent and alleges that other adjustments should have been made in petitioner's favor. The errors thus assigned are paraphrased as follows: (1) The Commissioner erred in treating as taxable income the sum of $48,700.09 gross receipts of the movement "Mankind United," this sum having been received by petitioner in his capacity as division superintendent of "Mankind United," an educational movement. (2) The Commissioner erred in disallowing a loss sustained on a foreclosure on certain property in Contra Costa County, California, which petitioner had acquired in the course of business or in a transaction entered into for profit. (3) The Commissioner erred in disallowing the personal exemption claimed by petitioner. (4) The Commissioner erred in not deducting from gross receipts of "Mankind United" certain expenses, to wit: (a) Bureau, personal and living expenses of 15 bureau managers - $35,651.67. (b) Bookbinding - $1,740.00. (c) Printing of forms and literature - $7,104.71. (d) Taxi fares - about $5,000.00 *160 to $6,000.00. (e) Telephone tolls - about $10,000.00 to $12,000.00. (5) The Commissioner erred in not permitting deduction of attorney's fees incurred by petitioner during the year 1940. Findings of Fact Petitioner is an individual with his residence at 1201 California Street in San Francisco, California. He filed his income tax return for the calendar year 1940 with the Collector for the First District of California at San Francisco. On this return he reported income from business of $38,713.08 and deductions of $48,480 for interest, $250 for taxes, and $40,500 as loss resulting from foreclosure sales. Under Schedule D of the return the nature of the business was stated as "Educational Movement 'Mankind United'." No business deductions were claimed under Schedule D. Under the heading of "Explanation of deductions" provided for in that schedule petitioner stated: "Actual costs are not deducted as losses and other deductions make this unnecessary." Under Schedule J of the return, petitioner claimed a personal exemption credit of $1,200 and stated: "Wife filed separate return and claimed $800 exemption. No community property under anti-nuptial contract of January 2, 1934." The *161 above deductions for interest, taxes and loss from foreclosure were explained in separate schedules of the return. The explanation of the foreclosure loss is in the margin. [1]
*162 On or about June 6, 1941, petitioner filed an amended income tax return for the calendar year 1940 in which the only item changed was that petitioner reported an income from business of $48,700.09 instead of the $38,713.08 reported in his original return. All the other items and explanations thereof, including the claim for a personal exemption credit of $1,200 and the explanation of the income from business were the same in the amended return as in the original return. The respondent in determining the deficiency herein disallowed all of the deductions claimed by petitioner and determined petitioner's net income to be $48,700.09, the amount reported by petitioner in his amended return as income from business. The respondent also disallowed the personal exemption credit of $1,200 claimed by petitioner but allowed petitioner an earned income credit of $300. During 1940 petitioner devoted his entire time in endeavoring to form a class of 20,000 enrollees to receive instruction in the activities of a cult or creed described in a book called "Mankind United." The book was published in 1940 and claim is made that it s6ld for $100 a copy. Whether petitioner is the author of such book *163 is not clear. Mankind United was not a separate legal entity; it was simply a name under which petitioner was operating. Petitioner had about 15 assistants who were called bureau managers. In this organization petitioner was always referred to as the division superintendent. Petitioner received and carried on correspondence with some 17 different countries and hoped to register 200,000,000 people throughout the world. He had a bureau in England and a number of bureaus throughout the United States. During the year 1940 petitioner and the bureau managers received a total of $48,700.09 from enrollment fees and from the sales of books. Out of this $48,700.09 the bureau managers either retained or were paid by petitioner a total of $35,651.67 which they expended for bureau, personal and living expenses in amounts as follows: Advertising
$ 378.58
Attorney fees
37.00
Automobile expense
4,898.58
Bank charges
43.29
Clothing
1,591.25
Dental bills
332.50
Doctor bills
269.14
Electric bills
492.91
Equipment
826.99
Express and freight
81.53
Fuel
47.85
Food
6,255.53
Furniture (office)
233.86
Gas bills
368.85
Hall rental
3,083.50
Laundry and cleaning
374.40
Meals for co-workers
637.65
Miscellaneous expense
1,119.31
Money order fees
15.36
Motorcycle expense
20.97
Paper, stationery and mimeo-
graph
586.78
Postage
894.72
Post office box rent
49.00
Printing
864.45
Rent
4,426.50
Stencils
35.18
Supplies (office)
517.22
Taxes (franchise and Internal
Revenue)
174.21
Telegrams
29.00
Telephone
946.62
Tools and hardware
41.93
Traveling expense
3,917.77
Water bills
148.67
Insurance
471.35
Mortgage payments and inter-
est
1,242.30
Property taxes
181.99
Newspapers and books
14.93
Total
$35,651.67
*164 The total amounts either retained by or paid by petitioner to each bureau manager during the year 1940 were as follows: Bureau
No.
Name of Bureau
Amount
1
The Faith Grace Bureau
$2,786.03
4
The Aub. Bureau
2,666.99
5
The George A. Ashwell Bureau
3,866.51
7
The Progressive Bureau
2,011.12
9
The Hall Gardener Bureau
1,691.38
11
Rosh-Ann Bureau
5,394.12
12
A. P. Mason Bureau
2,022.69
15
The Kathleen Bureau
2,115.43
13
The Three Maples Bureau
1,567.24
16
The Olive Branch Bureau
870.13
17
The Guilding Light Bureau
2,618.41
19
A. P. Roberts Bureau
2,588.94
20
Beacon Bureau
1,132.96
22
The A. P. B. Bureau
1,767.50
23
Ray of Light Bureau
2,552.22
Total
$35,651.67
Most of the receipts came from enrollment fees. The enrollment fee for each person enrolled was $20. As a general rule the particular bureau manager responsible for an enrollment would keep $14 of the fee for the purpose of meeting his bureau, personal and living expenses and would forward the balance of $6.00 to petitioner. If the amount retained for bureau, personal and living expenses was not sufficient the manager could call upon petitioner to make up the *165 deficit. Petitioner did not acquire any financial interest in any property acquired by any of the bureau managers with any part of the $35,651.67 expended by them. Any such property so acquired belonged to the individual bureau manager by whom the acquisition was made. The $35,651.67 which was either retained by or paid to the bureau managers was in the nature of reasonable compensation for personal services actually rendered by such bureau managers. In addition to the book called Mankind United, which is sometimes referred to as the textbook, petitioner had numerous mimeographed and printed bulletins explaining the program. Many of these were given away and some were sold. During 1940 petitioner paid The T. J. Cardoza Company, bookbinders and paper rulers of San Francisco, the amount of $1,740 for binding books that were ordered, bound and distributed in 1940. During 1940 petitioner also paid the Mercury Press of San Francisco the total amount of $7,104.71 for printing forms and literature. The order for this material was placed with the Mercury Press during 1940. During 1940 petitioner paid Howard B. Crittenden, Jr. $3,600 as a retaining fee for legal services in connection *166 with petitioner's then pending tax matter, other matters connected with Mankind United and some personal matters concerning creditors of a subdivision owned by petitioner. At least $1,200 of the amount was paid for services connected with petitioner's then pending tax matters and other matters connected with his activities as division superintendent of Mankind United and in no way connected with any criminal proceeding. During the years 1924 to 1926, inclusive, petitioner acquired about 500 acres of land at the east end of what is known as the Low Level Tunnel between Alameda and Contra Costa Counties. He named this the Belleshire subdivision and he spent over $300,000 for the property. During the taxable year 1940 the mortgages on two parcels of this property were foreclosed. The first parcel is referred to herein as the "Edmonds" parcel and the second parcel is referred to herein as the "Woodenware" parcel. The Edmonds parcel comprised an oil station, residence and small cafe building at the east entrance to the Belleshire subdivision. It comprised slightly over an acre of ground. Petitioner had spent about $7,000 for improvements on this parcel. During the taxable year 1940 *167 the Edmonds parcel was sold at public auction for $5,000 to the mortgagees of a mortgage petitioner had placed upon the parcel. The Woodenware parcel comprised about 145.85 acres. During the taxable year 1940, this parcel was sold at public auction for $14,500 to the mortgagee of a mortgage petitioner had placed upon the parcel. In years prior to the taxable year foreclosures had taken place on other parcels of the Belleshire subdivision. With the loss of the Edmonds and Woodenware parcels in the taxable year petitioner had no further interest in the Belleshire subdivision. These two parcels comprised about one-fifth of the value of the entire subdivision. During the entire year 1940 petitioner and his wife lived together at 1201 California Street, San Francisco, California. They filed separate income tax returns. Petitioner on his return claimed a personal exemption credit of $1,200 and his wife on her return claimed a personal exemption credit of $800. Opinion BLACK, Judge: This proceeding presents mainly questions of fact. Petitioner in his returns for the taxable year in question reported a gross income from Mankind United of $48,700.09 but did not claim any expense deductions *168 in earning that income for the reason, as he stated on his return, that he had claimed other deductions for interest, taxes and foreclosure losses totalling $89,230, which was far in excess of the gross income. The respondent disallowed all of the deductions claimed and computed the deficiency herein on the gross income reported of $48,700.09, less a credit for earned income of $300. Petitioner in his second amended petition assigned no error relative to the disallowance of deductions for interest and taxes totalling $48,730. The errors he did assign in his second amended petition are paraphrased in our opening statement. We hold that the $48,700.09 of gross receipts was correctly reported by petitioner as his gross income and we, therefore, deny his assignment of error (1). We pass immediately to the assignments of error (4) and (5) as set out in our opening statement which we will consider together. Section 23 (a) (1) of the Internal Revenue Code is in the margin. [2] The evidence seems clear that $35,651.67 of the total receipts of $48,700.09 was either retained by or paid to the 15 bureau managers who in turn used the $35,651.67 to pay for their own bureau, *169 personal and living expenses. We, of course, do not have before us the question of the deduction by any of these bureau managers of their own personal and living expenses. Petitioner did not acquire any financial interest in any of the property acquired through the use of any part of the total amount of $35,651.67. Any property so acquired belonged to the individual bureau manager who acquired it. We think the amounts that were either retained by or paid to the 15 bureau managers were in the nature of compensation for personal services actually rendered by such bureau managers and that the amounts so retained or paid were reasonable under all the circumstances. We hold, therefore, that the total amount of $35,651.67 so retained or paid is allowable as a deduction from gross income under section 23 (a) (1) of the Internal Revenue Code. We make the same holding relative to the amount of $1,740 paid by petitioner during the taxable year for bookbinding and we also make the same holding relative to the amount of $7,104.71 paid by petitioner during the taxable year for printing forms and literature. The most of this, if not all, seems to have been distributed in the *170 campaign for enrollees in "Mankind United." Relative to the amounts claimed by petitioner during the taxable year for taxi fares and long distance telephone calls, we do not think these have been properly substantiated. With reference to the three other items just named above petitioner has offered in evidence certain exhibits which seem to establish them with a reasonable degree of accuracy. Petitioner *171 has made no such proof to substantiate the large amounts of taxi fares and telephone calls which he claims to have expended in 1940 in connection with his activities as division superintendent of Mankind United. Therefore, the deduction of $5,000 to $6,000 for taxi fares and the deduction of $10,000 to $12,000 telephone tolls are disallowed for the lack of proper evidence to sustain them. We hold that petitioner should be allowed a deduction of $1,200 as attorney's fees paid in connection with his tax matters for 1940 and in carrying on his activities as division superintendent of Mankind United. Also in accordance with our findings of fact as to personal exemption, we hold that petitioner is entitled to a personal exemption credit of $1,200 as claimed on his income tax return. We hold that the Commissioner did not err in failing to allow petitioner a loss sustained on a foreclosure on certain property in Contra Costa County, California, as claimed in assignment of error (2). Petitioner may have sustained some loss on those foreclosures but he has not substantiated it by proper evidence. From the evidence which is in the record we would be wholly unable to determine the cost basis *172 of the two parcels of real estate which petitioner alleges were taken from him by foreclosure in the year 1940. Decision will be entered under Rule 50. Footnotes
1. SCHEDULE H - ITEM 18 Belleshire, subdivision on easterly end of Low Level Tunnel in Contra Costa County, purchased between 1926 to 1930 for purposes of resale (subdivision) by taxpayer. Approximately $100,000 spent in acquisition and $475,000 mortgages placed on property thereafter. At least $200,000 spent in improvements, litigation and promotion to place tunnel through lands. The following parcels known as: 1. Parcel secured by Edmonds Loan Mortgage 1.067 acres; 2. Parcel secured by Pacific Woodenware loan mortgage 145.85 acres; are both taken at 20% of the lands over which costs are allocated for purposes of income tax. To be conservative, the investment of $300,000 is taken as amounts computed as invested and spent on said subdivision in its entirety. Thus $60,000 is taken as loss resulting from foreclosure sales under deeds of trust securing said loans: 1. Edmonds Loan Deed of Trust, foreclosed by sale of M. Lorene Edmonds as substituted trustee to Harry G. and Eda Edmonds, dated June 25, 1940, and recorded November 2, 1940 in Vol. 551 O.R. pg. 334 Contra Costa Co., California, Official Records, sale price $5,000.00. 2. Woodenware Paper Co. Deed of Trust, foreclosed by sale of Louis P. Skinner and Carl Abbott, as substitute trustee to Pacific Woodenware & Paper Co., dated March 27, 1940 and recorded April 4, 1940 in Vol. 205 O.R. pg. 423, said Contra Costa County Official Records, Sale price $14,500.00. Computation: Pro-rated Costs of land (to parcel) $60,000.00 Sale price under recorded deeds 19,500.00 Loss, Item 18, deducted $40,500.00 Note: Foreclosure sale cut off all rights of redemption. Note: Land deeded to alter ego of Bell, Apartment Estates Club of America, but no separate corporate entity was recognized by Bell or the mortgagees or others dealing with the land, and corporate franchise of New Jersey corporation lapsed and at all times has been treated as non-existent.↩
2. SEC. 23. DEDUCTIONS FROM GROSS INCOME. In computing net income there shall be allowed as deductions: (a) Expenses. - (1) Trade or Business Expenses. - (A) In General. - All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered: traveling expenses (including the entire amount expended for meals and lodging) while away from home in the pursuit of a trade or business; and rentals or other payments required to be made as a condition to the continued use or possession, for purposes of the trade or business, of property to which the taxpayer has not taken or is not taking title or in which he has no equity.↩